**Douglas E. LEE, Plaintiff,**

v.

**Norman A. CARLSON; Dale Thomas; Linda Landcaster; Danny Wright; Charles Crandell; Windell Holmes; John H. Levett; Robert Eaks; Morton; Lieutenant Smith; Lieutenant L.H. Jones; William O'Neill; and Jacqueline Messite, M.D. Defendants.**

No. 85 Civ. 4442 (EW).

United States District Court,
S.D. New York.

Oct. 14, 1986.

Douglas E. Lee, pro se.

Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., New York City, for defendants; Randy M. Mastro, Asst. U.S. Atty., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendants, Norman A. Carlson, et al., move for an order dismissing the complaint against them pursuant to the Federal Rules of Procedure, Rules 12(b)(1), (2), (5), and (6), for lack of subject matter and personal jurisdiction, insufficiency of ser-

vice of process, and failure to state a claim upon which relief can be granted.

Plaintiff pro se Douglas E. Lee, an inmate at Greenhaven State Prison in Stormville, New York and a Florida resident, has filed suit against thirteen federal officials. He seeks to amend his complaint to add the United States government as a defendant. Plaintiff specifically alleges defendants' liability under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), §§ 2671–2680 for: (1) improper confinement in a holding cell with inadequate facilities; (2) improper medical treatment; (3) denial of a tobacco-free environment; (4) loss of personal property; and (5) improper monitoring of his telephone calls, while he was housed at the Metropolitan Correctional Center ("MCC") in New York City.

Plaintiff was in custody at the MCC on two occasions: (1) from May 18, 1984 until May 29, 1984, and (2) from July 6, 1984 to July 10, 1984.

### Discussion

### I. Service of Process

■ The burden of proof is on the plaintiff to show proper service of process when service is questioned by the defendant.[1] The defendants allege and present affidavits, affirmations, and declarations to support their claim that plaintiff has failed to effect proper service on eleven of the thirteen defendants. They allege that defendants Carlson, Thomas, Landcaster, Crandell, Holmes, Levett, Eaks, Morton, Jones, O'Neill, and Messite were served by mail, but without the enclosure of a notice and acknowledgment form and without a postage prepaid return addressed envelope.

Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure provides that a summons and complaint may be served upon a defendant of any class,

... by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment ... and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made. ...

by personal service upon the person to be served. Our Court of Appeals, in *Morse v. Elmira Country Club*[2] has held that mail service under Rule 4(c)(2)(C)(ii) is effective when the recipient receives the summons and complaint and accordingly has actual notice. With the exception of two of these eleven defendants, there is no dispute concerning these defendants' receipt of the summons and complaint by mail, and therefore the service was effective.[3]

■ Service in this case, however, differs from the service in *Morse* because here the plaintiff failed to include an acknowledgement form and an addressed prepaid return envelope with his service. However, this does not vitiate the effectiveness of the service because the court's holding in *Morse*, that mail service is effective when the recipient receives the summons and complaint and accordingly has actual notice, clearly emphasizes that the effectiveness of the service depends on the receipt of the summons and complaint, not on the supplementary material to be signed and returned by the recipient which, by itself, establishes proof of service. Failure to include the acknowledgement form and envelope does not render the service ineffective. The defect can be cured by an admission, or other proof, that in fact the summons and complaint were received.

**1.** *Saez Rivera v. Nisson MFG. Co.,* 788 F.2d 819, 821 n. 2 (1st Cir.1986); *Familia De Boom v. Arosa Mercantil,* S.A., 629 F.2d 1134, 1139 (5th Cir.1980), *cert. denied,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981); *Wells v. City of Portland,* 102 F.R.D. 796, 799 (D.Or.1984). *But see, Rosen v. Solomon,* 374 F.Supp. 915, 921 (E.D.Pa.1974), *aff'd,* 523 F.2d 1051 (3d Cir.1975)

(stating that the burden of proof is on the movant).

**2.** 752 F.2d 35, 41 (2d Cir.1984).

**3.** There is some question as to the receipt of a summons and complaint by defendants Thomas and Cranston which will be addressed later in the discussion.

There is no problem of proof of service for nine out of eleven of these defendants. While defendants assert improper service of process by plaintiff on eleven of the thirteen defendants, the declarations of Carlson, Landcaster, Levett, Eaks, Jones, Messite, and O'Neill admit that they have received the summons and complaint by mail. In addition, while defendants Holmes and Morton have made no declarations of any kind, defendants' brief and their attorney's affidavit fail to assert that they did not receive service, and a Process Receipt and Return signed by a U.S. Marshall or Deputy indicates service on Holmes on August 20, 1985. These admissions by the above defendants, as well as the evidence concerning Holmes and Morton, satisfy plaintiff's burden of proof[4] as to actual service on these defendants.

A different issue would arise if the movants contended they had not received the summons and complaint; however, their attack on the service by mail is based only on the failure to include the required acknowledgement. While it may be conceded that this was a technical failure to comply with Rule 4(c)(2)(C)(ii), since the essential purpose of the Rule is to assure that the process, in fact, was received by the defendant, when a defendant receives notice of the commencement of the action against him, the Rule should be liberally and not slavishly applied.[5] Therefore, service of process by plaintiff on defendants Carlson, Landcaster, Levett, Eaks, Jones, Messite, O'Neill, Morton, and Holmes was sufficient and has been adequately proven.[6]

The defendants Crandell and Thomas each state that he has not yet been served with the summons and complaint by personal service or by certified mail. Defendant Crandell's declaration that he was not served personally or by certified mail is contradicted by the brief submitted on his behalf by the government where it is stated that Crandell (as well as ten other defendants) was served by mail. In addition, the Marshall's Process Receipt and Return states that this defendant was served with personal process. Upon this state of the record, the court finds that effective service of process was made upon Crandell.

As to defendant Thomas, the government, in its brief, also acknowledged that service was made upon him. In this instance the Marshall's return indicated that service of process was made upon Thomas' secretary. This is not denied by her. Absent proof to the contrary, and there is none, it may be fairly inferred that the summons and complaint were delivered to him in the ordinary course of the secretary's duties. Moreover, the Assistant United States Attorney has submitted an affidavit in which he does not deny that Thomas received service.

All defendants named in this action were effectively served under Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure.

## II. Personal Jurisdiction

This Court does not have personal jurisdiction over defendant Carlson, who is being sued in his individual capacity, in this action. Carlson does not reside in New York and his place of business is in Washington, D.C. As the Director of the Federal Bureau of Prisons, he is responsible for the management of the federal prison system, including the MCC which is located in

---

**4.** *Saez Rivera v. Nisson MFG. Co.,* 788 F.2d 819, 821 n. 2 (1st Cir.1986); *Familia De Boom v. Arosa Mercantil, S.A.,* 629 F.2d 1134, 1139 (5th Cir.1980), *cert. denied,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981).

**5.** *Cf. Armco v. Penrod-Stauffer Building Systems, Inc.,* 733 F.2d 1087 (4th Cir.1984); *Perkin Elmer v. Trans Mediterranean Airways, S.A.L.,* 107 F.R.D. 55 (E.D.N.Y.1985).

**6.** Plaintiff's failure to comply with the second sentence of Rule 4(c)(2)(C)(ii), by making a follow-up personal service, does not affect the sufficiency of his service. In *Morse v. Elmira Country Club,* the court stated that, "It may well be that, under the literal terms of Rule 4(g), plaintiff could not make proof of service without the subsequent personal service," 752 F.2d at 39, and it added that the apparent purpose of the second service is to provide a foundation for the return. Id. at 40. These statements indicate that the court considers the personal service requirement to be a proof provision rather than impacting on the sufficiency of the service of process. This is logically supported by the fact that it is only required where the defendant fails to return the acknowledgement form.

New York. While this may be sufficient contact to satisfy due process,[7] it fails to satisfy New York's long-arm statute, § 302(a) of the New York Civil Practice Law and Rules.

The plaintiff alleges that the negligence, gross negligence, and deliberate indifference of Carlson in his supervision of the prison system, including the MCC, resulted in the plaintiff sustaining injuries while he was housed at the New York MCC. However, neither plaintiff's complaint nor his memorandum of law or declarations contain allegations or evidence of any direct actions taken by Carlson within the State. Moreover, Carlson does not come within the "persistent course of conduct" in the state prong of § 302(a)(3)(i) through the actions of his agents at the MCC in New York. In applying § 302(a) of the New York Practice Civil Practice Law and Rules, our Court of Appeals has held that in a claim against a government official sued in his *individual* capacity, as here, in exercising jurisdiction over the official through his agents, those agents must have represented him in his *individual* capacity rather than merely his official capacity.[8] There is no evidence, nor does the plaintiff allege, that any employee or tortfeasor at the MCC was acting as the personal rather than official agent of Carlson. Section 302(a)(3)(i) of the New York Civil Practice Law and Rules is not satisfied with respect to this defendant, and therefore the court may not properly exercise jurisdiction over him.

### III. Allegations

### A. Federal Tort Claims Act

■ The plaintiff specifically alleges liability against all thirteen defendants, in their individual capacities, under the Federal Tort Claims Act, 28 U.S.C. § 1346 and §§ 2671–2680 ("FTCA"). Under this Act, the United States is the proper and exclusive party. The FTCA does not provide a remedy against individual defendants, and therefore it cannot be the basis for a claim upon which relief can be granted in this case. However, because a pro se pleading must be read liberally, it is necessary to assess whether plaintiff's complaint can be construed to raise any other valid claims against the defendants.[9]

### B. Common-law Claims

■ For the plaintiff to assert any common-law claims for which the defendants may be held liable, he must allege wrongdoing which was outside the scope of their employment or which was within the scope of their employment but involved duties that allowed for no exercise of discretion or judgment.[10] This absolute immunity from common-law tort liability for government officials applies regardless of whether the tortious conduct was under-

---

7. See *Green v. Carlson,* 581 F.2d 669, 676 (7th Cir.1978), *aff'd,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *cf. Superior Oil Company v. Andrus,* 656 F.2d 33 (3d Cir.1981).

8. See *Green v. McCall,* 710 F.2d 29, 32–33 (2d Cir.1983); *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122–23 (2d Cir.1981). This doctrine applies to all subsections of N.Y.Civ.Prac.L. & R. § 302(a), see *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 569 (S.D.N.Y.1985).

9. *Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982).

It should be noted, however, that it is questionable that the rule should be applied to this plaintiff. He appears to be a frequent litigator of baseless claims. In a previous case, the trial judge described the plaintiff's suit as "certainly frivolous, and even in bad faith." *Friedgood v. Axelrod,* 593 F.Supp. 395, 396 (S.D.N.Y.1984); *see also Lee v. Delaney, et al.,* 85 Cir. 6266

(WCC), voluntarily dismissed June 30, 1986; *Lee v. General Foods Corp., et al.,* 84 Civ. 3143 (GCL), defendants granted summary judgment Mar. 18, 1986; *Lee v. Rahmani Constr. Corp., et al.,* 84 Civ. 7592 (KTD), dismissed *sua sponte* July 1, 1985; *Lee v. Johns-Manville Corp., et al.,* 85 Civ. 3232 (CBM), dismissed *sua sponte* April 26, 1985; *Lee v. Dalsheim, et al.,* 84 Civ. 7438 (CBM), dismissed *sua sponte* Oct. 26, 1984; *Lee v. Becker, et al.,* 84 Civ. 6276 (GLG), voluntarily dismissed Sept. 12, 1984; *Lee v. Smith, Kline & French, et al.,* 84 Civ. 2736 (CLB), withdrawn Sept. 11, 1984; *Lee v. Scully, et al.,* 82 Civ. 0097 (TPG), dismissed June 1, 1984; *Lee v. General Foods Corp., et al.,* 83 Civ. 7950 (CBM), dismissed *sua sponte* Nov. 2, 1983.

10. See *Barr v. Matteo,* 360 U.S. 564, 574–75, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959); *Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983); *Huntington Towers, Ltd. v. Franklin Nat'l Bank,* 559 F.2d 863, 870 (2d Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978).

taken for malicious or otherwise improper motives.[11] Even the most liberal reading of plaintiff's complaint fails to give rise to any allegations of wrongdoing by the defendants that falls outside the scope of their employment or does not involve acts of discretion or judgment. Plaintiff specifically alleges that the wrongdoings of defendants Thomas, Landcaster, Crandell, and Messite were failures of supervision and the implementation of policy in the performance of their duties. The plaintiff's allegations against Eak concern Eak's failure to give the plaintiff his cardiac medicine when he requested it. The plaintiff alleges that Eak's reason for this failure was that he lacked the opportunity to speak with or see the plaintiff during that time. This allegation clearly concerns an act of judgment within the scope of Eak's employment as a physician's assistant. Plaintiff's allegations against Jones, Morton, and O'Neill concern their alleged failure to take action in response to being informed that the plaintiff had been unsuccessfully requesting his cardiac medication. As correction officers and a correction counselor respectively, such an allegation does not give rise to any indication that their alleged tortious activity was outside of the scope of their employment or that it was a violation of specifically prescribed action.

The plaintiff never alleges any particular wrongdoing against defendants Wright, Holmes, or Levett; however, as the supervisor of maintenance and sanitation, the hospital administrator, and the assistant hospital administrator respectively, it can be inferred that plaintiff's general allegations of negligence and gross negligence refer to these defendants' supervision of their subordinates. This is clearly within the scope of their employment, involving acts of discretion or judgment. Finally, in his allegations and statement of facts which pertain specifically to defendant Smith, plaintiff fails to make clear whether or not Smith omitted to relay plaintiff's request for his cardiac medicine to the duty officer or only ordered discipline of plaintiff for asking him to relay the message. Construing the complaint liberally, however, it can be inferred that the plaintiff's general allegations concerning negligence, gross negligence, and deliberate indifference of the employees of the United States are meant to include Smith's order of disciplinary action against the plaintiff. The ordering of the disciplinary action by defendant Smith is without doubt a discretionary or judgmental function carried out within the scope of a correction officer's employment. Moreover, even if Smith had no authority to order such action, the plaintiff does not allege that any disciplinary action was ever taken against him.

The complaint fails to state a cause of action in common-law tort against any of the defendants due to the immunity that applies to all of plaintiff's allegations.

## C. Constitutional Torts

To the extent that the complaint can be read to allege constitutional torts,[12] such torts would arise under the Fifth Amendment, Eighth Amendment, and Fourth Amendment.[13] While it is true that a pro se plaintiff's complaint must be liberally construed,[14] the United States Supreme Court has also recognized that suits against federal officers are easily commenced, often unfounded, and very costly, and therefore insubstantial lawsuits should be quickly terminated.[15] Moreover, our

---

**11.** See *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); *Gilliam v. Quinlan,* 608 F.Supp. 823, 830 (D.C.N.Y.1985).

**12.** See *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**13.** See *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Carlson v. Green,* 446 U.S. 14, 20, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980) (A *Bivens*

remedy is available to an individual even though the allegation could also support a suit against the United States under the Federal Tort Claims Act).

**14.** *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982).

**15.** See *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982).

Court of Appeals has stated that "conclusory," "vague," or "general allegations" of deprivation of constitutional rights will be dismissed,[16] and damage liability should not be imposed on government officials or employees, even for constitutional torts, if they acted reasonably under the circumstances.[17]

### 1. Fifth Amendment

■ Any potential Fifth Amendment claim the plaintiff has made must be based on a violation of the due process clause or federal statutes or regulations. Plaintiff's claims in regard to the loss of his glasses, clothes, and typewriter must rest on a contention that his property was taken from him without a proper pre-deprivation hearing.[18] He has, however, failed to make any specific factual allegations for basing a claim on the Fifth Amendment against any of the named defendants. The plaintiff asserts, very generally, that defendants Thomas, Landcaster, and Crandell were "remiss, negligent, gross [sic] negligent" in performing their duties. He also alleges that Thomas was remiss, negligent, and grossly negligent in selecting, training, and supervising his subordinates.[19] The plaintiff does not direct these general assertions at any specific injury alleged by him, and without more they fail to state any violation of the plaintiff's constitutional rights by the defendants. The plaintiff fails to allege either how or which defendants caused, contributed to, or were in any way responsible for, the alleged loss of his property. Nor does the plaintiff contend that any procedures were lacking or violated which led to these loses. Furthermore, it is not a sufficient allegation against any of the defendants that the correction guard who allegedly failed to lock the door to his cell may have acted in a deliberately or recklessly indifferent manner, or that prison officials may have stolen the plaintiff's clothes and typewriter. The Second Circuit has extended the Supreme Court's holding in *Monell v. Department of Social Services of City of New York*,[20] that a municipality cannot be held liable for constitutional tort claims under 42 U.S.C. § 1983 under the doctrine of respondeat superior absent proof that an official policy caused the tort, to requiring, in *Bivens*-type actions, direct and personal responsibility on the part of defendants' action.[21] Plaintiff's complaint fails to make any allegations of direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of his property, and therefore plaintiff's complaint fails to allege any Fifth Amendment constitutional tort violation against any of the defendants.

### 2. Eighth Amendment

To the extent that plaintiff's complaint alleges possible Eighth Amendment claims, this would involve his being housed in a small holding cell without blankets or a mattress for two nights, being deprived of his cardiac medicine, and not being assigned to a non-smoking floor. The United States Supreme Court has stated that it is necessary to show deliberate indifference, rather than mere accident or negligence, in order to make a valid claim of an Eighth Amendment violation by a government official.[22]

#### a. Cell Conditions

■ While plaintiff alleges that he was housed in a holding cell without being immediately processed and without a blanket or mattress, he fails to attribute these ac-

---

**16.** Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir.1977); *Black v. United States*, 534 F.2d 524, 527–28 (2d Cir.1976); *Gilliam v. Quinlan*, 608 F.Supp. 823, 830 (D.C.N.Y.1985).

**17.** See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Gilliam v. Quinlan*, 608 F.Supp. 823 (D.C.N.Y. 1985).

**18.** See Parratt v. Taylor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1980).

**19.** None of the allegations against any of the other defendants can be fairly read to relate to the plaintiff's property claims.

**20.** 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978).

**21.** See Ellis v. Blum, 643 F.2d 68, 85 (2d Cir. 1981); *Black v. United States*, 534 F.2d 524, 527–28 (2d Cir.1976).

**22.** Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

tions to any of the named defendants. The complaint fails to relate any deliberate indifference or reckless action or inaction on the part of defendants that may have led to, or permitted, such treatment. Because plaintiff has not alleged any direct or personal conduct or responsibility on the part of any of the defendants, the complaint does not state a claim upon which relief can be granted in this action.

### b. Cardiac Medicine

The complaint alleges that plaintiff was denied his cardiac medicine despite repeated requests for it. Specifically, plaintiff alleges that defendant Eaks failed to give him his cardiac medicine for two days because he did not "have the opportunity to see or speak with plaintiff," that defendant Smith recommended that plaintiff be disciplined "for demanding his cardiac medication," and that defendants Jones, Morton, and O'Neill were told by plaintiff that he wanted to be placed in a non-smoking area and were informed of the matter concerning his cardiac medication.

The fact that Eaks did not have the opportunity to see or to speak with the plaintiff does not rise beyond the level of negligence to the level of deliberate or reckless indifference to plaintiff's serious medical needs. In fact, it is not alleged that Eaks even knew that the plaintiff wanted or needed his cardiac medication. While the intentional denial or delaying of plaintiff's access to medical care, or the intentional interference with his treatment once prescribed, would be a violation of the Eighth Amendment, the specific facts asserted against Eaks do not make out such a claim. Mere negligence or accident fails to rise to the level of an Eighth Amendment violation.[23]

Smith's recommendation that plaintiff be disciplined is not alleged to have

been improper, nor is it alleged to have been actually carried out. The mere conclusory allegation that Smith ordered discipline of plaintiff, without allegations as to whether or not he had reason to order such discipline, under what circumstances such discipline was ordered, whether the order was the result of negligence or intentional wrongdoing, and whether any action was taken as a result of the order, does not state an Eighth Amendment violation.

Similarly, plaintiff's allegation that defendants Jones, Morton, and O'Neill took no action when specifically told of the matters concerning plaintiff's cardiac medication does not allege the deliberate or reckless indifference required by *Estelle*. Plaintiff alleges that on a single occasion he specifically informed these defendants that he was being deprived of his medication. Absent further allegations or facts, it cannot be said that a single isolated instance of improper treatment of the type alleged against these three individuals demonstrates a constitutional violation.[24] Unlike a case such as *Archer v. Dutcher*,[25] where the plaintiff alleged that numerous requests were made of the defendants to give her access to medical attention during a five hour period, the plaintiff here contends that at a single point in time he informed these three defendants of the situation concerning his cardiac medicine and they took no action. This is insufficient to charge these particular defendants with a constitutional violation.[26]

Plaintiff's specific allegations against defendant Messite is that she failed in her legal duty to inspect and evaluate a safety and health program at the MCC, that she knew or should have known that MCC did not have proper air circulation, and that pursuant to the Federal Rehabili-

**23.** *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976).

**24.** *Cf. Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir.1984); *Society for Good Will to Retarded Children v. Cuomo*, 737 F.2d 1239, 1245 (2d Cir.1984); *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir.1977).

**25.** 733 F.2d at 16.

**26.** At most, the non-action of these three defendants might be considered to be a part of a pattern of conduct against the plaintiff involving numerous other prison personnel. However, given the nature of this single instance it is

tation Act of 1973, 29 U.S.C. § 794,[27] she should have established an appropriate policy concerning the exposure by plaintiff to tobacco smoke inside a federally owned and operated building such as the MCC. Plaintiff also alleges that he was damaged by such exposure. To support his claims, plaintiff contends that Messite has never personally entered the MCC facility and that she has failed to give any supervision or direction at MCC. This fails to state a claim against Messite. Her job description clearly indicates that she does not have a duty to establish, monitor, or enforce any policies concerning health and safety in relation to the plaintiff's housing at the MCC. Her position explicitly concerns occupational safety and health standards as they relate to the hazardous working conditions of men and women. Her job is, therefore, unrelated to the allegations made against her by the plaintiff.[28]

This claim also fails to state a cause of action against any of the other defendants because there is no allegation in the complaint, and nothing in the record, to indicate that plaintiff was being exposed to smoke in violation of any then existing statute or regulation, or that any of the other defendants acted unreasonably under the circumstances [29] in exposing plaintiff to tobacco smoke.

insufficient to give rise to a claim of deliberate indifference in regard to these three individuals.

27. 29 U.S.C. § 794 is inapplicable to the plaintiff in this case. This statutory provision applies to nondiscrimination in the employment of handicapped persons in Federal assistance programs, not to Federal prisons.

28. See Regional Consultant for Occupational Safety and Health (supervisory) GS–602–15 job description.

29. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

30. See Lanza v. New York, 370 U.S. 139, 142–44, 82 S.Ct. 1218, 1220–21, 8 L.Ed.2d 384 (1962); United States v. Paul, 614 F.2d 115, 116 (6th Cir.), cert. denied, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980); cf. Hudson v. Palmer, 468 U.S. 517 (1984); United States v. Figueroa,

### 3. Fourth Amendment & 42 U.S.C. § 1983

Plaintiff entered the MCC on May 18, 1984, and he alleges that he did not receive notification that the telephones in the housing units were in fact wiretapped or monitored until his orientation session on May 23, 1984. He also alleges that his telephone conversations, including those with an attorney, were systematically wiretapped, recorded, and monitored from May 18, 1984 up to, and including, May 29, 1984.

The Fourth Amendment does not prohibit monitoring of prisoners' telephone conversations done in order to preserve the security and orderly management of the institution and to protect the public.[30] Consonant therewith, 28 C.F.R. § 540.101 states that the warden shall established procedures that enable monitoring of telephones located within the institution for those purposes and that the warden must provide notice to the inmate of the potential for monitoring. In addition, this regulation prohibits monitoring of an inmate's properly placed call to his attorney and requires the warden to notify an inmate of the proper procedures to insure that the call will not be monitored.[31] The Director of the Federal Bureau of Prisons, Carlson, followed this requirement by implementing procedures, that require giving notice to the inmates and establish regula-

757 F.2d 466 (2d Cir.1985) (Discussing the diminished reasonable expectations of privacy a prisoner has in his cell, property, and conversations).

31. This does not violate the wiretap provisions of Title III, 18 U.S.C. § 1791 et seq. because it falls under an exception to the Act. Pursuant to § 2510(5)(a)(i) the monitoring is to take place within the ordinary course of correctional officers' duties and with reasonable notice of the monitoring to the inmates. See United States v. Paul, 614 F.2d 115, 117 (6th Cir.), cert. denied, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980); Crooker v. U.S. Department of Justice, 497 F.Supp. 500, 503 (D.Conn.1980); cf. Watkins v. L.M. Berry & Co., 704 F.2d 577, 583 n. 6 (11th Cir.1983) (distinguishing business calls from the uniqueness of the prison situation under 18 U.S.C. § 2510(5)(ii)); Campiti v. Walonis, 611 F.2d 387, 392 (1st Cir.1979) (monitoring not shown to be related to prison security or pursuant to ordinary course of business).

tions in regard to calls made by them to attorneys, under the Federal Prison System Program Statement 5264.3, as did defendant Thomas under the MCC Institution Supplement 5264.3. The plaintiff alleges violations of these monitoring procedures on the grounds that from May 18 until May 23 he had no notice of the monitoring procedures before making calls to his attorney and others. Plaintiff, however, admits that "The defendants do not know in advance who the plaintiff may call" and he does not allege that he ever informed prison officials when such calls to his attorney were being made.[32] In regard to the consent issue, while the plaintiff may have alleged a claim which is actionable under 42 U.S.C. § 1983 [33] against the person or persons directly responsible for the failure to provide notice in accordance with the statute,[34] as previously mentioned, it is well settled, as evidenced by the Supreme Court's decision in *Monell v. Department of Social Services of City of New York*,[35] that the plaintiff must allege the defendants' direct and personal responsibility for the purportedly unlawful conduct of their subordinates. Nowhere in his complaint, affidavits or exhibits does plaintiff allege any sort of personal and direct responsibility on the part of the named defendants for his lack of notification. In fact, he states that when he went to the prison law library at the MCC, to look for copies of the regulations, the person on duty informed him that such regulations are generally stolen by other federal inmates. The official policy of the Federal Prisons and MCC, as evidenced by the Program Statement signed by Carlson and the Institution Supplement signed by defendant Thomas, is to inform prisoners of the monitoring. Moreover, defendants Jones and O'Neill gave plaintiff notice of the monitoring at his orientation hearing. Plaintiff does not allege that any of the other defendants were directly and personally responsible, through their stated policies, conduct, or otherwise, for the failure to give him notice.

The defendants' motion to dismiss the complaint against all the defendants for failure to state a claim upon which relief can be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is granted.

### IV. The United States as a Party

This complaint contained various allegations against thirteen defendants as to whom, for the reasons set forth above, it has been dismissed. Plaintiff moves for leave to amend his complaint to add the United States as a party. With the dismissal of the complaint there is nothing to amend. The plaintiff's motion to add the United States as a party to this action is denied without prejudice to the commencement of an action against the United States.

So ordered.

---

**32.** Obviously, during the period he allegedly had no notice of monitoring by the prison he would not necessarily know to notify officials that he was calling his attorney; however, the prison officials would also have no way to know not to monitor those calls made to his attorney. Therefore, monitoring of attorney calls during that time involves the issue concerning a lack of notice rather than a violation of the provision prohibiting the monitoring of calls made to an attorney.

**33.** While his claim might state a violation of the federal regulations, it does not state a violation of Title III because there is no allegation, nor is there any evidence in the record, that the monitoring of calls was anything but routine, random, and for the sole purpose of ensuring the security and orderly management of the institution. This does not violate Title III since it would be an exception to it under 2510(5)(a)(ii).

**34.** *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). This court does not reach this issue.

**35.** 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1980); *See also, Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied sub nom. Employee-Office John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).