Marvin MANYPENNY, Margaret Norcross, Seraphine Rock, Theodore Hoagland, Leroy Nelson, George McDonald, Dorothy Brown, John Brown, Maggie Weaver, Winona LaDuke, Sun Bear (a/k/a Vincente LaDuke), Shirley LaDuke, Clifton LaDuke, George Peake, Jr., David Peake, Lesley Bellecourt, Fred Weaver, Earl Peabody, Maji Gabo, a/k/a Laverne Boswell, John Bush, Harry Kettle, Albert Murray, Luella B. Morrison Hulburt, George Fineday, Sr., and Norma Koenen, Plaintiffs,

v.

The UNITED STATES of America, the United States Department of Interior, Donald Hodel, individually and in his official capacity as Secretary of the Interior, Ross Swimmer, individually and in his official capacity as Assistant Secretary of the Interior for Indian Affairs, State of Minnesota, County of Becker, County of Clearwater, County of Mahnomen, Thomas Triplett, Commissioner of Revenue, State of Minnesota, individually and in his official capacity, Ernest E. Kretzschmar, Harold Nystrom, Elizabeth Nystrom, Albin Scherping, S.E. Mooers, Violet J. Schroeder, Samuel Gladdig, Frances Johnson, L.G. Everest, Inc., Leslie M. Hanson, Wabun School District #435, Allen Aanerud, Arnold Basted, Douglas Kramer, Joan Kramer, Richard Swiers, Agnes Swiers, A.J. Wambach, Jr., Beryl Wambach, Brian M. Elliott, Veronica M. Elliott, Gerald Fleming, Susan Fleming, Robert G. McGregor, Jacqueline McGregor, John Doe and Mary Roe, current and past holders or claimants to lands on the White Earth Indian Reservation properly belonging to Plaintiffs and members of the respective classes they represent, Defendants.

Civ. No. 4–86–770.

United States District Court, D. Minnesota, Fourth Division.

April 10, 1989.

Kurt V. BlueDog, Larry B. Leventhal, Edina, Minn., Edward M. Peterson, Jr., Grand Forks, N.D., Douglas Hall, Legal Rights Center, Inc., Minneapolis, Minn., for plaintiffs.

Jerilyn K. Aune, William A. Szotkowski, Sp. Asst. Attys. Gen., St. Paul, Minn., for

defendants State of Minn. and Thomas Triplett, Comm'r of Revenue, State of Minn., Individually and in His Official Capacity.

Charles Dayton, Nancy Wiltgen Reibert, Minneapolis, Minn., for defendants Becker, Clearwater and Mahnomen Counties, Albin and Marlene Scherping, Allen and Geraldine Aanerud, Douglas and Joan Kramer and Richard and Agnes Swiers.

Mary E. Carlson, Asst. U.S. Atty., Minneapolis, Minn., for defendants U.S., U.S. Dept. of Interior, Donald Hodel and Ross Swimmer.

Wayne P. Dordell, Beth G. Sullivan, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, Minn., for defendants A.J. Wambach, Jr. and Beryl Wambach.

Michael Kraker, Mahnomen County Atty., Mahnomen, Minn., for County of Mahnomen.

James Wilson, Clearwater County Atty., Bagley, Minn., for Clearwater County.

John E. Pearson, Becker County Atty., Detroit Lakes, Minn., for Becker County.

## ORDER

DOTY, District Judge.

This case concerns the rights to parcels of land constituting the White Earth Reservation. Plaintiffs are persons who are members of the White Earth Band of Chippewa Indians and beneficiaries of land allotments on the White Earth Reservation. They seek declaratory, injunctive, and monetary relief against the United States, the Department of the Interior (DOI), the Secretary of the Interior, and the Assistant Secretary for Indian Affairs; the State of Minnesota and its Commissioner of Revenue; the counties of Becker, Clearwater and Mahnomen; and numerous named and unnamed individual holders of, or claimants to, the disputed land. The historical and factual background of this case are set forth in greater detail in this Court's earlier Order dated February 12, 1988.

This matter is currently before the Court upon the motion of the defendant counties for dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.

R.Civ.P. 12(b)(7). This matter is also before the Court upon various individual defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(5); Fed.R.Civ.P. 12(b)(6); and Fed.R.Civ.P. 12(b)(7).

## DISCUSSION

### I. *Insufficient Service of Process*

Individual defendants Albin and Marlene Scherping, Allen and Geraldine Aanerud, Douglas and Joan Kramer and Richard and Agnes Swiers have moved to dismiss the Amended Complaint for insufficiency of service of process, contending that plaintiffs failed to comply with the requirements set forth in Fed.R.Civ.P. 4(c)(2)(C)(ii). That Rule provides in part:

> A summons and complaint may be served upon a defendant ... by mailing a copy of the summons and the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgement conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgement of service under this subdivision is received by the sender within 20 days after the date of mailing, service of the summons and complaint shall be made under subparagraph (A) or (B) of this paragraph....

Defendants contend that plaintiffs' attempt to serve them by mail was defective because plaintiffs failed to provide two copies of a notice and acknowledgement conforming substantially to form 18–A. Even if plaintiffs had included the proper forms with the Summons and Amended Complaint, defendants contend that service was ineffective because personal service was not made despite the fact that, other than signed certified mail return receipts from the mailing envelope, plaintiffs had not received acknowledgement of service within 20 days after the date of mailing.

Under Rule 4(c)(2)(C)(ii) it is unclear whether service is sufficient if the defendants have actual notice or whether an acknowledgement form must be returned in order for service to be sufficient. Although the Eighth Circuit has not ad-

dressed the issue, a majority of the courts that have addressed this issue have held that the Rule's requirements are explicit and that the legislative history indicates that Congress intended that service would be ineffective if the acknowledgement form or a substantially similar writing were not returned.[1] In many of these cases, the courts held that service was ineffective although certified mail return receipts had been signed and returned by defendants. *E.g., Combs v. Nick Garin Trucking*, 825 F.2d 437 (D.C.Cir.1987) (return of acknowledgement form required for effective service despite the fact that certified mail return receipt was returned); *Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877 (3d Cir.1987); *United States v. Gluklick*, 801 F.2d 834 (6th Cir.1986) (return of acknowledgement form required for effective service despite fact that certified mail return receipt was signed and returned), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987); *Delta Steamship Lines, Inc. v. Albano*, 768 F.2d 728 (5th Cir.1985) (same); *Armco, Inc. v. Penrod–Stauffer Building Systems, Inc.*, 733 F.2d 1087 (4th Cir.1984) (same); *Guth v. Andersen*, 118 F.R.D. 502 (N.D.Cal. 1988); *Bernard v. Strang Air, Inc.*, 109 F.R.D. 336 (D.Neb.1985) (return of acknowledgement form required for effective service despite fact that certified mail return receipt was signed and returned and despite the fact that plaintiff was *pro se*); *Henry v. Glaize Maryland Orchards*, 103 F.R.D. 589 (D.Md.1984) (return of acknowledgement form required for effective service despite fact that certified mail return receipt was signed and returned); *but see, Morse v. Elmira Country Club*, 752 F.2d 35 (2nd Cir.1984); *Lee v. Carlson*, 645 F.Supp. 1430 (S.D.N.Y.1986) (service effective even though no acknowledgement form or return envelope), *aff'd*, 812 F.2d 712 (2nd Cir.1987). Based upon a review of

the explicit language of the statute and the legislative history, this Court concludes that the majority interpretation is the correct interpretation of Fed.R.Civ.P. 4(c)(2)(C)(ii). Accordingly, on the facts of this case, plaintiffs' attempted service of process was ineffective if made under Rule 4(c)(2)(C)(ii).

▪ Plaintiffs assert, however, that service of copies of the Summons and Amended Complaint on the individual defendants was not made pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii), was done properly under Minnesota law and, therefore, was effective. According to plaintiffs, it is clear that the individual defendants actually received copies of the Summons and Amended Complaint and, in fact, acknowledged receipt by signing return receipt forms provided by the United States Post Office. Plaintiffs assert that this form of acknowledgement is acceptable under Rule 4.05 of the Minnesota Rules of Civil Procedure, the Rule under which plaintiffs attempted service.

Service in accordance with Minnesota law is authorized by Fed.R.Civ.P. 4(c)(2)(C)(i) as an alternative to service under Fed.R.Civ.P. 4(c)(2)(C)(ii). Rule 4.05 of the Minnesota Rules of Civil Procedure permits service by mail to be made in essentially the same manner as under Fed.R.Civ.P. 4(c)(2)(C)(ii). Plaintiffs argue, however, that the Minnesota rule is distinguishable from the majority interpretation of the federal rule in that the acknowledgement requirement under the Minnesota rule may be satisfied by a certified mail receipt. *See Stonewall Ins. Co. v. Horak*, 325 N.W.2d 134 (Minn.1982).

Although not directly on point, *Stonewall* is sufficiently analogous to provide persuasive authority on the issue presently before the Court. *Stonewall* involved an action against a serviceman stationed in another country. Plaintiffs in that case

---

1. Congress, in rejecting the Supreme Court's proposed mail service rule authorizing a default judgment without the receipt of any acknowledgement of service if the record contained a return receipt showing acceptance by defendant, Supreme Court's Proposed Federal Rule of Civil Procedure 4(d)(8), *reprinted in*, 2 J. Moore, J. Lucas, H. Fink & C. Thompson, Moore's Fed-

eral Practice ¶ 4.01, at 4–44.1 to 4–44.2 (1985), evinced an intent that service would not be effective merely upon receipt and return of a signed certified mail return receipt. *See* 128 Cong.Rec. H9850 (1982) (appendix to statement of Rep. Edwards); Federal Rules of Civil Procedure Amendments Act of 1982, Pub.L. No. 97–462, 96 Stat. 2527.

attempted to effect service by sending a copy of the summons and complaint to Horak by certified mail, addressed to his army post office box number in New York. Horak received the pleadings and personally signed the return receipt card attached to the mailing envelope. Horak then moved to dismiss the action for insufficiency of process. The district court denied the motion. On appeal, the Minnesota Supreme Court held that, under Minn.Stat. § 543.19 (1980), the Minnesota long arm statute, and former Minn.R.Civ.P. 4.03(a), prescribing the manner of personal service, actual receipt of the summons and complaint by mail, evidenced by a certified mail receipt signed by the individual defendant, constitutes effective service. *Id.* at 136.

Since the decision in *Stonewall* the Minnesota Rules of Civil Procedure have been amended, specifically to permit service by mail. *See* Minn.R.Civ.P. 4.05 (1988). The language of Minn.R.Civ.P. 4.05 is nearly identical to that of Fed.R.Civ.P. 4(c)(2)(C)(ii). When statutes or rules are adopted *in haec verba* from another jurisdiction, decisions from the other jurisdiction predating the enactment of the adopted rule or statute generally constitute persuasive authority for interpreting the adopted rule or statute. *E.g., Van Cleef v. Aeroflex Corp.*, 657 F.2d 1094 (9th Cir. 1981); *Founding Church of Scientology of Washington, D.C. v. Verlag*, 536 F.2d 429, 175 U.S.App.D.C. 402 (D.C.Cir.1976); *Briggs v. Sterner*, 529 F.Supp. 1155 (D.Iowa 1981).

The current version of Minn.R.Civ.P. 4.05 was enacted March 21, 1985. Thus, for purposes of interpreting Rule 4.05, the only relevant cases interpreting Fed.R.Civ.P. 4(c)(2)(C)(ii) are those decided before March 21, 1985. A review of that body of decisional law, however, reveals that a split in the circuits existed even before the Minnesota law was enacted. Accordingly, cases interpreting the federal rule shed little light on the Minnesota legislators' intended application of Rule 4.05.

The advisory committee notes to the most recent version of Minn.R.Civ. 4.05 indicate, however, that the addition of Rule 4.05 does not modify the holding in *Stonewall*. Thus, although a majority of jurisdictions have interpreted Fed.R.Civ.P. 4(c)(2)(C)(ii) strictly, the committee's comment concerning the holding in *Stonewall* suggests that it was intended Minn.R. Civ.P. 4.05 would be applied liberally, similar to the application of the parallel federal rule in *Lee v. Carlson*, 645 F.Supp. 1430, 1432 (S.D.N.Y.1986). In *Stonewall*, as in *Lee*, the court focused upon whether there was proof of actual receipt, rather than whether the plaintiff had adhered strictly to the rule governing personal service. Because the individual defendants in this case signed and returned the certified mail return receipts and have in other ways admitted actual receipt of the Summons and Complaint, under the policy set forth in *Stonewall*, service was effective under Minn.R.Civ.P. 4.05 and, therefore, under Fed.R.Civ.P. 4(c)(2)(C)(i).

## II. *Failure To Join An Indispensable Party*

By this Court's Order dated February 12, 1988, plaintiffs' claims against the United States were dismissed. Pursuant to Fed.R. Civ.P. 12(b)(7), the defendant counties and individual defendants A.J. and Beryl Wambach, Albin and Marlene Scherping, Allen and Geraldine Aanerud, Douglas and Joan Kramer and Richard and Agnes Swiers have moved to dismiss the Amended Complaint for failure to join a party—the United States—under Fed.R.Civ.P. 19.

Rule 12(b)(7) authorizes a motion to dismiss for failure to join an indispensable party. Rule 19(b) provides that if a person needed for just adjudication as described in Rule 19(a):

cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by pro-

tective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the Supreme Court held that the following four interests should be examined in each case to determine whether "in equity and good conscience," an action should proceed without a party whose absence is compelled:

> First, the plaintiff has an interest in having a forum.... Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another.... Third, there is the interest of the outsider whom it would have been desirable to join.... Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Id.* at 109–11, 88 S.Ct. at 737–39. The Supreme Court rejected a rigid and formulistic approach to the application of this test and instead instructed that the determination should rest on the practical conditions of each case. *See id.* at 119–20, 88 S.Ct. at 743; *Fetzer v. Cities Service Oil Co.*, 572 F.2d 1250, 1253 (8th Cir.1978).

An issue similar to that presented in this case arose in *Nichols v. Rysavy*, 809 F.2d 1317 (8th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 103 (1987). There, Indians brought suit against various defendants—including the United States and its officers, the State of South Dakota, Washabaugh County, and numerous individual landowners—seeking recognition that land allotments originally held in trust for them remained held in trust, damages for wrongful possession, and attorneys' fees. At issue in *Nichols* were the so-called "forced fee" patents that were issued by the Secretary of the Interior to many mixed-blood allottees prior to the expiration of the twenty-five year trust period established by federal law, whether or not the allottee applied for a patent. *Id.* at 1322–23. As a result of the issuance of a forced fee patent, all restrictions as to sale, incumbrance or taxation of the allotment were lifted, resulting in allegedly void sales, transfers of ownership or tax forfeitures of allotments subject to forced fee patents. *Id.* at 1328.

After the United States was dismissed as a party in *Nichols* on statute of limitations grounds, the court dismissed plaintiffs' claims against the remaining defendants holding that, under the four factors explored in *Provident Tradesmens,* the United States was an indispensable party since its fiduciary duties with respect to the trust patents would be reinstated if plaintiffs' suit was successful. *Id.* at 1334.

The court in *Nichols* found that the first factor of the test set forth in *Provident Tradesmens* weighed in favor of the plaintiffs. *Id.* at 1332. Similarly, in this case, defendants concede that plaintiffs have an interest in a forum and that better joinder is not possible in any other form. Accordingly, this Court concludes that the first factor weighs in favor of plaintiffs.

The second factor is the defendants' wish to avoid multiple litigation, inconsistent relief, or sole responsibility for liability shared with another. The Court in *Nichols* stated that the second factor "meshes closely" with the third factor which requires courts to consider the interests of outsiders whom it would have been desirable to join. *Id.* at 1333. In analyzing these factors the court reasoned:

> "In examining these two factors, we note that if appellants prevailed in this suit, the United States would be reinstated as trustee over the land, with the concomitant resumption of fiduciary responsibility, and could also be subject to claims for damages by the present owners. Furthermore, the result of this suit, on the merits, would depend entirely on whether the United States acted legally or illegally in granting fee patents under the blood quantum policy. If the United States issued the patents legally, then appellants' action is groundless. 'In

short the government's liability cannot be tried "behind its back" ' (citation omitted)."

*Id.* (quoting *Mine Safety Appliances Co. v. Forrestal,* 326 U.S. 371, 375, 66 S.Ct. 219, 221–22, 90 L.Ed. 140 (1945)). Based upon this reasoning the court found " 'it absurd to argue ... "for an order declaring that the United States still holds allotments in trust ... and ordering the federal defendants to ensure the necessary records reflect such title," ... and then assert that the United States is not indispensable.' " *Id.*

■■■ Similarly, in this case, the underlying issue is whether the Department of the Interior, in issuing forced fee patents erroneously interpreted the Clapp Amendment, 34 Stat. 353 (1906). If so, the United States' trust responsibility continued after passage of the Clapp Amendment and title to the disputed tracts arguably is held by the United States in trust for the allottee or the allottee's heirs.[2] Because a judgment on the merits in favor of plaintiffs would necessarily involve a finding that the federal government breached its trust responsibilities, this litigation cannot properly proceed without joining the United States as a defendant to protect its interests. Further, without the United States as a defendant, and in the likely event that the United States would not be subject to an action by the remaining defendants, it appears likely that the remaining defendants would bear sole responsibility for a liability shared with the United States. Thus, the second and third factors weigh in favor of dismissal.

The fourth factor for consideration is the interest of the courts and the public in complete, consistent, and efficient resolution of controversies. In *Nichols* the court concluded that this factor weighed in favor of dismissing the action because:

"forced fee patent claims have far reaching social, economic, and political ramifications * * *. Title to millions of acres of land is clouded, thus affecting real estate transactions, probate proceedings, and credit availability. In other words, thousands of landowners are effectively barred from selling their land.

Another ramification involves the validity of a fee patent issued by the U.S. Government. If these fee patents can be successfully attacked, the entire United States title system is in jeopardy. Title insurance companies, who relied on the fee patent would face financial ruin."

809 F.2d at 1333 (quoting *Nichols v. Rysavy,* 610 F.Supp. 1245, 1254 (D.S.D.1985)). As plaintiffs point out, however, the enactment of WELSA effectively eliminates the threat of these wide ranging problems. Thus, in the absence of any stronger arguments from the defendants, the Court cannot conclude that this factor weighs in favor of dismissal.

Considering these factors as a whole, the Court concludes that they weigh in favor of dismissal. Although there are two factors in favor of dismissal and two factors against dismissal, the Court finds that the dominant factors compel dismissal. The government's interest in protecting itself from liability is not trivial.

[T]he Bureau of Indian Affairs, which is the agency of the Department of the Interior charged with fulfilling the trust obligations of the United States, is faced "with an almost staggering problem in attempting to discharge its trust obligations with respect to thousands upon thousands of scattered Indian allotments. In some cases, the adequate fulfillment of trust responsibilities on these allotments would undoubtedly involve administrative costs running many times the income value of the property."

*Poafpybitty v. Skelly Oil Co.,* 390 U.S. 365, 374, 88 S.Ct. 982, 986, 19 L.Ed.2d 1238 (1968) (quoting H.R.Rep. No. 2503, 82d Cong., 2d Sess., 23 (1952)). Further, plaintiffs' interest in avoiding the imposition

---

**2.** Plaintiffs contend that the Minnesota Supreme Court's holding in *State v. Zay Zah,* 259 N.W.2d 580 (Minn.1977), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2263, 56 L.Ed.2d 758 (1978), put to rest any question as to the United States continuing trust responsibility. The Court notes, however, that the Minnesota Supreme Court's interpretation of federal law, while highly persuasive, is not binding on this Court.

sole liability where there is potential joint liability is a heavy factor in favor of dismissal.[3]

### III. *Failure to State A Claim*

Finally, the defendant counties and individual defendants Albin and Marlene Scherping, Allen and Geraldine Aanerud, Douglas and Joan Kramer, and Richard and Agnes Swiers have moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss plaintiffs' claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985(3) and 2000d as well as plaintiffs' claims for trespass, conversion and unlawful exclusion.[4] Each of these claims is predicated on a finding that plaintiffs have title to, or a protectable property interest in, the disputed tracts. Because plaintiffs' claim for title has been dismissed, these claims must be dismissed as well.

Accordingly, IT IS HEREBY ORDERED that:

1. The motion to dismiss for insufficiency of service of process of Albin and Marlene Scherping, Allen and Geraldine Aanerud, Douglas and Joan Kramer, and Richard and Agnes Swiers is denied.

2. The motion to dismiss for failure to join an indispensable party of Mahnomen County, Becker County, Clearwater County, A.J. and Beryl Wambach, Albin and Marlene Scherping, Allen and Geraldine Aanerud, Douglas and Joan Kramer, and Richard and Agnes Swiers is granted; and

3. The motion to dismiss for failure to state a claim upon which relief may be granted of Mahnomen County, Becker County, Clearwater County, Albin and Marlene Scherping, Allen and Geraldine Aanerud, Douglas and Joan Kramer, and Richard and Agnes Swiers is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

3. The Court is sensitive to the fact that the result reached here might be analogized to the infamous "Catch 22". However, where both parties are well represented by competent counsel, and the facts and law both demand one result, the Court must discharge its sworn duties by administering "justice without respect to persons."

---

4. Defendants A.J. and Beryl Wambach did not join this motion, thus these claims against them will not be dismissed at this time.