HUMANA, INC., d/b/a Humana Hospital San Antonio, Plaintiff-Counter Defendant-Appellee,

v.

AVRAM A. JACOBSON, M.D., P.A., Defendant-Counter Plaintiff-Appellant.

No. 86–2388
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1986.

Sullivan, McWilliams, Lewin, Markham & Disner, Jeffrey D. Lewin, Mitchell S. Rosenheim, San Diego, Cal., for defendant-counter plaintiff-appellant.

Jerry A. Gibson, Tim T. Griesenbeck, Jr., San Antonio, Tex., for plaintiff-counter defendant-appellee.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

At the instance of a hospital that had been paid by Medicare for pathology services rendered to its patients, the district court entered a preliminary injunction prohibiting a pathologist, formerly employed by the hospital, from billing patients, in apparent violation of Medicare regulations, for pathological services provided by the hospital during the period of his employment pending trial of a suit for a permanent injunction against him. We hold that the pathologist was properly served with process in accordance with state service-of-process rules pursuant to Federal Rule of Civil Procedure 4(c)(2)(C) even though an earlier effort to make service on him by mail was unsuccessful and that the record supports the district court's finding of irreparable injury. Accordingly, we affirm the order of the district court.

I.

Medicare reimburses health care providers for two kinds of services. Part A of the Medicare regulations concerns hospital

and hospital-related services.[1] Part B concerns supplemental medical services.[2] The classification of services as being covered by Part A or Part B determines the amount of reimbursement payable to a provider. Before 1982, there was controversy about whether hospital-based physicians who rendered services only to hospital patients could recover compensation for their services under Part B or whether compensation for these services was payable only to the hospital.[3] In the Tax Equity and Fiscal Responsibility Act of 1982, Congress directed the Department of Health and Human Services ("HHS") to develop criteria for distinguishing between Part A and Part B services.[4] In accordance with the Tax Act, HHS adopted regulations that classify most clinical pathology services performed in the hospital as controlled by Part A.[5] Those regulations bar hospital-based physicians from labeling their services as Part B services and billing patients separately for them.[6] HHS also decided to direct enforcement measures at hospitals. If a hospital-based physician bills a Medicare patient for what the regulations identify as Part A services, HHS may withdraw all Medicare funding from the hospital.[7]

Humana Hospital, the plaintiff, engaged Dr. Avram Jacobson, the defendant, to provide pathological services from 1974 to 1986 at its hospital in San Antonio. Jacobson's contract permitted him to bill patients for clinical pathology services. In 1983, however, after HHS adopted its Tax Act regulations, Jacobson stopped billing patients. Instead, he requested Humana to reimburse him for Part A services out of

funds it received from Medicare in addition to the other amounts paid him by the hospital. Humana took the position that the HHS regulations prevented such reimbursement. Aware of the HHS regulations and of the possible action HHS might take against the hospital, Jacobson then threatened to send bills directly to Medicare patients who had received Part A pathological services after 1983. Humana notified HHS of Jacobson's intentions, and HHS indicated that it would enforce its penalty regulations. When Jacobson advised HHS that he intended to begin billing the former patients, Humana sought injunctive relief. After granting a temporary restraining order, the district court issued a preliminary injunction.

Jacobson contends that the district court did not have personal jurisdiction over him. He also argues that, if it did, the court had inadequate grounds to enjoin him. Finally, he challenges the size of the injunction bond and an interim extension of the temporary restraining order.

## II.

Jacobson asserts that Humana never perfected service of process because, when it failed to serve him successfully by mail, it was required to serve him in person and instead it served him in accordance with the state service-of-process rules by service on the Secretary of State.

Humana first attempted to serve Jacobson by mail under Federal Rule of Civil Procedure 4(c)(2)(C)(ii)[8] but it sent him only

---

1. 42 U.S.C. §§ 1395c–1395i (1982).

2. 42 U.S.C. §§ 1395j–1395w (1982).

3. *College of American Pathologists v. Heckler,* 734 F.2d 859, 860 (D.C.Cir.1984).

4. *Id.* at 860–61; 42 U.S.C. § 1395xx(a)(1) (1982).

5. *American Pathologists,* 734 F.2d at 861.

6. 42 C.F.R. § 405.550(d)(1) (1985).

7. 42 C.F.R. § 405.550(d)(3) (1985).

8. Rule 4(c)(2)(C) reads as follows:

A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—

(i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State, or

(ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledge-

one copy of the required notice and acknowledgement form, instead of two, and no return envelope. In addition, Jacobson never acknowledged receipt of the summons.

■ After attempting service by mail and failing to receive Jacobson's acknowledgment, Humana tried to serve him in person, but Jacobson had moved from Texas to California. When this effort to make service failed, Humana served process on the Texas Secretary of State, invoking Federal Rule of Civil Procedure 4(c)(2)(C)(i).[9] According to Jacobson, however, once Humana attempted service by mail, it could not then serve him pursuant to the Texas statute because paragraph (C)(ii), which authorizes service by mail, provides, "if no acknowledgement of service under [ (C)(ii) ] is received …, service *shall* be made under [4(c)(2)(A) or 4(c)(2)(B) ]," both of which are personal service-provisions.[10]

Jacobson relies upon *Armco Inc. v. Penrod-Stauffer Bldg. Systems,* [11] in which the court held that, once the plaintiff attempted service by mail, it had to complete service in that fashion.[12] We prefer the reasoning of the Second Circuit in *Morse v. Elmira Country Club.* [13] As that court reasoned, Congress modified the Supreme Court's version of the service-by-mail provision, paragraph (C)(ii), "to insure that defendant[s] would always receive actual notice." [14] The congressional action, designed to ensure fair treatment of defendants, indicates no intention to create unfairness for plaintiffs by eliminating an otherwise permissible method of service.[15] Ja-

cobson has received actual notice of the suit by a method of service authorized by the rules, and is not unfairly subjected to the court's jurisdiction.

In *Norlock v. City of Garland,* [16] which is cited by Jacobson, we dismissed the plaintiff's action for failure to comply with the mail service requirements.[17] In dictum, we went on to state that, had Norlock wanted to perfect service, he was required to serve the defendants personally.[18] Upon further reflection, we recognize that this statement misconstrued the mail-service rule.

■ Literal interpretation of the word "shall" would distort the purpose of the rule. The rule permits plaintiffs to serve defendants in person or under state law or in accordance with the federal mail service procedure set forth in the rule. Its language is clear: the plaintiff has the option to elect any of these procedures. A plaintiff may attempt the inexpensive method of using the mail. If the plaintiff does not effect service in this way, service must be made in some other fashion. The use of the word "shall" does not automatically require that, if the attempt to effect service by mail fails, only personal service is permitted. Service pursuant to state-law procedure is still permitted.

### III.

Jacobson challenges the preliminary injunction on the basis that Humana did not demonstrate irreparable injury. Because the injunction is interlocutory, whether it

ment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

9. *Id.*

10. *Id.* (emphasis added).

11. 733 F.2d 1087 (4th Cir.1984).

12. *Id.* at 1089.

13. 752 F.2d 35 (2d Cir.1984).

14. *Id.* at 41. *See also* 128 Cong.Rec. H9850 (daily ed. Dec. 15, 1982) (statement of Rep. Edwards), *reprinted in,* Siegel, Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions, 96 F.R.D. 88, 118–19 (1983).

15. *Morse,* 752 F.2d at 40–41 & n. 9.

16. 768 F.2d 654 (5th Cir.1985).

17. *Id.* at 656–57.

18. *Id.* at 657.

should be issued turns upon the sound discretion of the district court, and the burden of showing an abuse of discretion by the district court rests upon the appellant.[19]

To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable. The plaintiff need show only a significant threat of injury from the impending action,[20] that the injury is imminent, and that money damages would not fully repair the harm.[21] Jacobson stated expressly that he would begin billing patients for Part A services, and HHS expressly warned Humana that it would enforce its regulations if the billing occurred. Loss of Medicare funding would directly deprive Humana of more than 50% of its business. The loss of such funding would also cause many of the physicians who direct their patients to Humana to treat their patients at other hospitals. The district court did not therefore abuse its discretion in finding irreparable injury.

Humana need not exhaust the administrative remedies available through HHS before seeking a preliminary injunction against Jacobson. Although providers like Humana may pursue an administrative appeal against action by HHS,[22] Jacobson, a private person, is not amenable to administrative procedures. Humana was not required to allow Jacobson to proceed, then to seek relief against reprisal by HHS. If HHS granted no administrative relief, Humana would be in effect out of business.

The district court set the preliminary injunction bond at $10,000, rejecting Jacobson's request for a security bond of $1 million. This court has held that "[t]he amount of security required is a matter for the discretion of the trial court."[23] Jacobson asserts that he is due more than $1 million for services rendered between 1983 and 1986. The injunction does not eliminate the liability of patients for Jacobson's services if indeed any debt is due; it merely delays his billing them until the suit is decided. In addition, the record provides serious reason to doubt that Jacobson has any legitimate claim to be paid personally for the services.[24]

The district court extended the temporary restraining order issued on March 31, 1986 beyond April 20, twenty days beyond its initial issuance.[25] Because the validity or invalidity of the temporary restraining order does not affect the validity of the later issued preliminary injunction, the propriety of continuing the restraining order is moot.[26]

For these reasons, the order is AFFIRMED.

**19.** *Meyers v. Moody,* 723 F.2d 388 (5th Cir.1984) (per curiam).

**20.** *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969); *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953); 11 Wright & Miller, Federal Practice & Procedure § 2948 at 437 (1973).

**21.** *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472–73 (5th Cir.), *reh'g denied,* (1985); *Posada v. Lamb County, Texas,* 716 F.2d 1066, 1070 (5th Cir.1983).

**22.** 42 C.F.R. §§ 405.1501–405.1595 (1985).

**23.** *Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 569 F.2d 300, 303 (5th Cir.1978) (per curiam). *See also* Fed.R.Civ.P. 65(c).

**24.** *Scherr v. Volpe,* 466 F.2d 1027, 1035 (7th Cir.1972).

**25.** *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70,* 415 U.S. 423, 433, 94 S.Ct. 1113, 1121–22, 39 L.Ed.2d 435 (1974); Fed.R.Civ.P. 65(b). The text of Rule 65(b) states in part:

> Every temporary restraining order ... shall expire ... within ... 10 days ... unless ... the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.

**26.** *In re S.L.E., Inc.,* 674 F.2d 359, 364 (5th Cir.1982).