A.I.M. INTERNATIONAL, INC., et al., Plaintiffs,

v.

BATTENFELD EXTRUSIONS SYSTEMS, INC., et al., Defendants.

Civ. A. No. 86–215–2–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 12, 1987.

**634**

Bruce Hofstadter, Macon, Ga., for plaintiffs.

Walter E. King, III, Macon, Ga., Richard V. Normington, Dallas, Tex., for defendants.

## ORDER

OWENS, Chief Judge.

Defendants Battenfeld Extrusionstechnik, GmbH ("BEG"), Dr. Willi Dalhoff and Heinrich Schmiedeskamp urge this court to reconsider its June 2, 1987, order in which the court determined that "defendants' motions to dismiss will be carried with the case and decided upon the trial of the case." Specifically, defendants ask this court to grant their motion to dismiss on the basis of a lack of *in personam* jurisdiction. By so requesting, defendants have omitted from this motion grounds asserted previously, including insufficiency of process and insufficiency of service of process. Those assertions were the subject of a conference call involving the parties and this court during which defendant, through counsel, "agreed to acknowledge service subject to all of their constitutional and legal defenses and rights...." *See* Order of this court dated March 19, 1987. Pleadings filed subsequent to the issuance of that order, however, again raised objections regarding the sufficiency of service of process. Therefore, in the interests of judicial economy, this court will consider the service of process issue.

In addition, and again to further judicial economy, this court will include within its consideration of the issues the status of a fourth defendant, Battenfeld Extrusions Systems, Inc. ("BESI"). Defendant BESI is represented by the same counsel as the other three defendants and has been a party to all prior pleadings excepting this most recent motion to reconsider.

### Facts

Defendant BEG is a corporation organized and existing under the laws of the Federal Republic of Germany ("West Germany") with its principal place of business at Bad Oeynhausen, West Germany. Defendant BESI is a corporation organized and existing under the laws of the State of Texas with its only place of business at Arlington, Texas. Defendant Dalhoff is a resident of West Germany, a member of the Board of Management of defendant BEG and an officer and representative of defendant BESI. Defendant Schmiedeskamp is a resident of West Germany, general manager of defendant BEG and former acting president of defendant BESI.

A.I.M. International, Inc. ("A.I.M."), a Georgia corporation, and individuals Tom Robert and Willem Boltong, Georgia residents and officers of A.I.M., are the plaintiffs in this action. They filed this action on July 29, 1986, based on the following allegations.

On or about January, 1985, plaintiffs met with representatives of the corporate defendants in Atlanta, Georgia, "to discuss issues and problems with the plaintiffs' responsibilities as agents for the sale of defendants' products." *See* Affidavit of Tom Robert. On or about September, 1985, in West Germany, plaintiffs and defendants entered into an oral contract establishing plaintiffs as defendants' agents in the southeastern United States. *Id.* Pursuant to the oral contract, believing themselves to be and representing themselves as defendants' agents, plaintiffs made substantial sales of defendants' products, including sales to Georgia corporations DYKA U.S.A., Inc. and Jack's Plastic Company. Plaintiffs point to defendants' leasing of a warehouse in Macon, Georgia, as an indication of the defendants' activities pursuant to this contract.

A second meeting occurred in Atlanta, Georgia, on or about March 21, 1986, during which the parties "entered negotiations and discussions on a proposed modification of the oral contract." *Id.* Following the collapse of these negotiations, plaintiffs brought this action seeking damages for commissions earned but as yet unpaid. Plaintiffs further seek damages for defendants' fraudulent inducement and bad faith.

Plaintiffs' attorney mailed copies of the "Acknowledgment of Receipt of Summons and Complaint" to each defendant at defendant BESI's place of business in Arlington, Texas. In so doing, plaintiffs' attorney relied upon Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure. Conflicting interpretations of what followed cloud the record. In essence, however, plaintiffs allege, and defendants dispute, that defendants represented an intent to acknowledge service. The 120–day period allotted for proper service expired on November 26, 1986. *See* Fed.R.Civ.P. 4(j). On January 30, 1987, Gerhard Folie, President of defendant BESI, signed the acknowledgment, which was received by the clerk of this court on February 9, 1987.

### Service of Process

Defendants essentially assert three reasons why the service of process was insufficient in this case. First, defendants argue that the service of process by mail was invalid from the start. *See* Defendants' Response to Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss ("Defendants' Response"). Second, defendants contend that, assuming the validity of service by mail, defendants were not served before the expiration of the 120–day period. *Id.*. Finally, as to the two West German individuals and the West German corpora-

tion, defendants argue that service of process must be effectuated pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention"). *Id.*

■ The construction of Rule 4(c)(2)(C)(ii) [1] has been the subject of some debate among the various federal courts. One school of thought held that the provision, an amendment to the Rule that became effective on February 26, 1983, allows service by mail without regard to state law on the manner of service. *Chronister v. Sam Tanksley Trucking, Inc.*, 569 F.Supp. 464, 469 (N.D. Ill. 1983) (federal courts no longer dependant on the forum state's rules regarding service of process); *Boggs v. Darr*, 103 F.R.D. 526 (D.Kan.1984) (though amenability to jurisdiction continues to be governed by state long arm statutes, method of service shall be governed by Rule 4(c)(2)(C)(ii)). These cases, however, have been discredited within their respective districts. Pursuant to a motion to reconsider, the district court held that, notwithstanding the provisions for service by mail contained in the Federal Rules, the defendant must be personally served in accordance with Illinois law. *Chronister v. Sam Tanksley Trucking, Inc.*, 109 F.R.D. 1 (N.D. Ill. 1983); *see also Epstein v. Wilder*, 596 F.Supp. 793, 797 (N.D. Ill. 1984) (because Rule 4(c)(2)(C)(ii) did not supersede Rule 4(e), service not authorized by forum state rules cannot be used for extraterritorial service). Similarly, *Boggs* has been brought into question in *Reno Distributors v. West Texas Oil Field Eq.*, 105 F.R.D. 511 (D. Kan. 1985). The court in *Reno Distributors* found service

---

**1.** Rule 4(c)(2)(C)(ii) reads, in relevant part, that "a summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule ... (ii) by mailing a copy of the summons and of the complaint (by first class mail, postage prepaid) to the person to be served...." Paragraphs (1) and (3) of subdivision (d) refer to "individuals other than an infant or an incompetent person" and a "domestic or foreign cor-

poration" respectively. The Rule further provides for alternative means of service if no acknowledgment of service is received within twenty days after the day of mailing. In that event, Rule 4(c)(2)(D) requires the plaintiff to effect personal service upon and the court to assess the costs of such service to a defendant who, without good cause, fails to return the notice and acknowledgment of receipt of summons within the allotted twenty days.

by mail unavailable outside the territorial limitations established in Rule 4(f) unless Congress intended to exempt from such limitations the 1983 amendments to the Rule. Finding an absence of such legislative intent, the court concluded that Rule 4(c)(2)(C)(ii) was subject to the territorial limits in Rule 4(f).

The *Reno Distributors'* court relied heavily upon *William B. May Co., Inc. v. Hyatt,* 98 F.R.D. 569 (S.D.N.Y.1983), the first case in which the meaning of Rule 4(c)(2)(C)(ii) was considered. In *Hyatt,* the court found it "clear that [Rule 4(c)(2)(C)(ii)] is subject to the territorial restrictions imposed by" Rule 4(f). *Id.* at 570. According to *Hyatt,* extraterritorial service by mail is available only if authorized by either the federal or the state statute which provides the basis of the court's jurisdiction in the particular case.

District courts in Georgia, following *Hyatt,* have held that service by mail upon nonresident defendants in actions founded upon the Georgia long arm statute is insufficient service of process. *Thermo-Cell Southeast, Inc. v. Technetic Industries,* 605 F.Supp. 1122, 1123–24 (N.D.Ga.1985); *See Thornwood Lease Plan v. Action Ad of Tidewater,* 650 F.Supp. 34, 36 (N.D.Ga. 1986) (service by mail not authorized either by Federal Rules or Georgia law, though in this case service not quashed because defendant specifically consented to service by mail). The Eleventh Circuit has not yet considered the question of the propriety of service by mail upon a nonresident defendant when jurisdiction is premised upon the state long arm statute. However, at least two other circuits have done so. *See Morse v. Elmira Country Club,* 752 F.2d 35 (2nd Cir.1984); *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.,* 804 F.2d 1390 (5th Cir. 1986).

At issue in *Morse,* a diversity case, was the effect of Rule 4(c)(2)(C)(ii) in a state that did not allow mail service in the manner authorized by the Federal Rule. Citing

*Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the court held "that plaintiffs may serve process in the manner specifically provided by the Federal Rules even if state law mandates a contrary method of service." *Morse,* 752 F.2d at 38.

In *Humana, Inc.,* the Fifth Circuit reconsidered a previous opinion narrowly construing the mail-service rule.[2] The court stated that "[t]he rule permits plaintiffs to serve defendants in person or under state law[3] or in accordance with the federal mail service set forth in the rule. Its language is clear: the plaintiff has the option to elect any of these procedures." *Humana, Inc.,* 804 F.2d at 1393. *cf. Delta Steamships Lines, Inc. v. Albano,* 768 F.2d 728 (5th Cir.1985) (impliedly recognizing the plaintiff's option to serve process in accordance with either state law or federal rules).

Though in each case considered by the circuit courts the relevant state law apparently permitted service by mail, such service was permitted in a manner different from the manner countenanced in the Federal Rules. Further, the courts placed no emphasis upon either the existence or the absence of any relevant state statute regarding service by mail. However, in an effort to further illuminate the issue, this court has examined the legislative history as reported in 128 Cong.Rec. H9850 (daily ed. Dec. 15, 1982), *reprinted* in Siegel, Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions, 96 F.R.D. 88 (1983). The legislative history establishes that service by mail was a means contemplated by Congress to alleviate the burden on the Marshals Service of serving process in private civil actions. In fact, the original Supreme Court proposals would have eliminated the option to use methods provided by state law as a means of procuring effective service. Congress retained the local option, however, stating:

---

**2.** *Norlock v. City of Garland,* 768 F.2d 654 (5th Cir.1985).

**3.** Texas law permits service by registered or certified mail. Tex.R.Civ.P. 106. [footnote added].

H.R. 7154 carries forward the policy of the current rule and *permits* a party to serve a summons and complaint upon individuals and organizations described in Rule 4(d)(1) and (3) in accordance with the law of the state in which the district court sits. Thus, the bill authorizes four methods of serving a summons and complaint on such defendants: (1) service by a nonparty adult (Rule 4(c)(2)(A); (2) service by personnel of the Marshals Service, if the party qualifies ...; (3) service in any manner authorized by the law of the state in which the district court is held (Rule 4(c)(2)(C)(i); *or* (4) service by regular mail with a notice and acknowledgement of receipt form enclosed (Rule 4(c)(2)(C)(ii).

*Id.* at 118–19 (emphasis added). Referring to Rule 4(c)(2)(C) in the section by section analysis, Congress stated that 4(c)(2)(C)(i) "restates the *option* to follow local law," including service by mail if the state law so allowed, while 4(c)(2)(C)(ii) *"permits* service of a summons and complaint by regular mail." *Id.* at 121 (emphasis added).

Finding the legislative history clear, this court determines that Rule 4(c)(2)(C)(ii) authorizes service of process by mail upon nonresident defendants without regard to relevant state law. Such a reading gives meaning to the amendments to the Rule and avoids unnecessarily complicating the tasks of counsel where there is no legitimate state interest to be served. Further, such a reading adds consistency to Rule 4, permitting the word "may" in Rule 4(e) to be read as authorizing service in the manner prescribed by state law while not precluding the federal mechanism of service by mail. *See* Wright and Miller, Federal Practice and Procedure: Civil 2d § 1115.

▮ Defendants next attack the effectiveness of the service, essentially arguing that their unexplained failure to return until February 9, 1987, the acknowledgment promptly mailed by plaintiffs' attorney should vitiate the service of process and entitle them to a dismissal of the action. This court will not hear the complaints of a defendant that service was not perfected when defendant has in effect evaded service by failing to return the acknowledgment of service. *See Prather v. Raymond Construction Co., Inc.,* 570 F.Supp. 278, 282 (N.D.Ga.1983).

Generally, the effectiveness of service of process pursuant to Rule 4(c)(2)(C)(ii) depends "upon an appropriate response by the defendant...." *Armco, Inc. v. Penrod-Stauffer Bldg. Systems,* 733 F.2d 1087, 1088 (4th Cir.1984); *Delta Steamships Lines, Inc. v. Albano,* 768 F.2d 728, 730 (5th Cir.1985) (Rule 4(c)(2)(C)(ii) provides an integrated procedure for establishing and proving *in personam* jurisdiction as well as service of process and, therefore, defendant's return and acknowledgment is an essential part of procedure); *In Re Alexander Grant & Co.,* 110 F.R.D. 544, 545 (S.D. Fla.1986) (court, lamenting its inability to do otherwise, finds service ineffective despite defendants' manipulation of Rule); *Red Elk v. Stotts,* 111 F.R.D. 87, 89 (D.Mont.1986) (service under Rule 4(c)(2)(C)(ii) not effective until acknowledgment returned). However, some courts have refused to read the rule "to void a received-but-unacknowledged mail service, or to substitute the requirement of personal service in lieu of an acknowledged mail service." *Morse v. Elmira Country Club,* 752 F.2d 35, 39 (2nd Cir.1984); *c.f. Perkin Elmer v. Trans Med. Airways, S.A.L.,* 107 F.R.D. 55, 58–59 (D.C.N.Y.1985) (service by mail pursuant to Rule 4(c)(2)(C)(ii) need not be acknowledged to be effective); *Lee v. Carlson,* 645 F.Supp. 1430, 1432 (S.D.N.Y. 1986) (mail service effective when defendant receives the summons and complaint and accordingly has actual notice).

In *Perkin Elmer,* the court noted the necessity of personal delivery of process unless an acknowledgment of service is received by the sender within 20 days. The court found, however, that a letter from the defendant to defendant's counsel indicating defendant's actual notice of the lawsuit was sufficient to satisfy the Rule when defendant's counsel forwarded a copy of the letter to plaintiff's counsel. The intent of the Rule "was motivated by a concern

that defendants be assured of actual notice of the pendency of a lawsuit, not by a desire to impose rigid formalities to be followed strictly on pain of a finding of defective service." *Perkin Elmer*, 107 F.R.D. at 59. In *Lee*, the court held that the failure to include the acknowledgment form and postage prepaid envelope does not render service ineffective because such a "defect can be cured by an admission, or other proof, that in fact the summons and complaint were received." *Lee*, 645 F.Supp. at 1432.

Defendants argue that, pursuant to Rule 4(c)(2)(C)(ii), plaintiffs were obligated to effect personal service upon defendants when after twenty days plaintiffs failed to receive the acknowledgment. Since plaintiffs failed to do so within the 120 days permitted for service of process by Rule 4(j), defendants contend the action should be dismissed. Such a dismissal would be without prejudice. *See* Fed.R.Civ.P. 4(j).

While this court recognizes that plaintiffs' attorney could, and probably should, have acted sooner either to effect personal service or to move for an enlargement under Fed.R.Civ.P. 6(b),[4] this court believes that "strong factors of justice and equity push toward reading Rule 4(c) as providing effective mail service where, as here, the recipient actually receives the mail service but refuses to acknowledge it properly." *Morse*, 752 F.2d at 40. Pursuant to Rule 4(c)(2)(D), any costs of personal service could have, and would have, been imposed upon the defendants in this case, as they have shown anything but good cause for failing to properly acknowledge. To prevent a dismissal or an enlargement, with the additional, unnecessary costs either result would create, this court arranged a conference via phone on March 19, 1987. This court intended, and understood, that such conference, which resulted in defendants' acknowledgment of receipt of service, would end this technical dispute.

In line with *Morse, supra,* and the other cases cited thereunder, this court finds that defendants' tardy return of the acknowledgment on February 9, 1987, coupled with their subsequent acknowledgment through counsel, satisfies the purpose of the Federal Rules of Civil Procedure and provides defendants actual notice of the action against them. This court will neither dismiss the action nor quash service on this ground.

■ Finally, the West German defendants contend that as to them the action should be dismissed or service quashed because of plaintiffs' failure to serve them pursuant to the Hague Convention. This multinational treaty is designed to facilitate service of judicial documents in foreign nations, and it allows signatories both to reject certain service mechanisms and to add specific requirements for effecting service within their respective nations. West Germany has ratified the treaty with certain reservations. Specifically, West Germany has rejected service of process by direct mail, requiring instead that service of process be effectuated through the appropriately designated central authorities. West Germany also requires that the documents be translated into the German language.

In a recent case, the Supreme Court had occasion to refer to the requirements of the Hague Convention. *See Societe Nat. Ind. Aero. v. U.S. Dist. Ct.,* 482 U.S. ——, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). Contrasting the nonmandatory language in a recent treaty prescribing procedures by which judicial authorities in one State may request the production of evidence located in another State, the Supreme Court pointed out that the Service Convention (the "Hague Convention" in dispute in the instant case) "provided a model exclusivity provision" purporting to describe the procedures for transnational service. *Id.* at —— and n. 15, 107 S.Ct. at 2550 and n. 15, 96

---

**4.** *See United States for Use and Benefit of Deloss v. Kenner General,* 764 F.2d 707, 711 (9th Cir. 1985) (even after the Rule 4(j) 120–day period has expired, trial judge may grant an extension of time to effect service if plaintiff satisfies the good cause requirement of Rule 4(j)). This court believes that plaintiff could establish good cause.

L.Ed. at 478 and n. 15. In the context of that opinion, the meaning of such an exclusivity clause might mean either of two things. First, the provision may insist upon strict compliance with the Hague Convention; second, the Hague Convention might be interpreted to require first, but not exclusive, resort to the procedures mandated by the Convention. *Id.* at ——, 107 S.Ct. at 2550, 96 L.Ed. at 477.

Prior lower court decisions have not considered these possibilities; instead, the courts have required at least substantial compliance with the Hague Convention to properly effect service on foreign defendants. *See e.g., Brown v. Bellaplast Maschinenbau,* 104 F.R.D. 585 (E.D.Pa.1985) (service attempted upon West German defendant which does not conform to Hague Convention must be quashed and plaintiff granted additional time within which to properly obtain service); *Vorhees v. Fisher & Kracke,* 697 F.2d 574 (4th Cir.1983) (action should not be dismissed until plaintiffs are given a reasonable opportunity to effect valid service); *Harris v. Browning-Ferris Industries Chem. Serv.,* 100 F.R.D. 775 (M.D.La.1984); *Fox v. Regie Nationale Des Usines Renault,* 103 F.R.D. 453 (W.D. Tenn.1984) (technical omission by plaintiff otherwise complying with Hague Convention not fatal to service of French defendant).

The Eleventh Circuit recently indicated its inclination to follow these prior decisions. *See Davis v. Pyrofax Gas Corp.,* 805 F.2d 370 (11th Cir.1986), citing *Jim Fox Enterprises, Inc. v. Air France,* 664 F.2d 63 (5th Cir.1981) (case remanded to allow plaintiffs to attempt valid service on Air France), and *Vorhees, supra.* Though *Davis* involved a Michigan corporation rather than an alien one, the decision indicates a desire to permit plaintiffs the opportunity to effect proper service rather than dismiss the action.

In light of *Societe Nat. Ind. Aero.* and *Davis,* this court determines that, technical-

ly speaking, defendants have not been served pursuant to the Hague Convention. Defendants have, however, acknowledged service of process through their attorney's return of the Acknowledgments dated May 15, 1987. To avoid the unnecessary waste of time and money that would result from quashing service of process only to allow plaintiffs additional time to serve process pursuant to the Hague Convention, this court orders these defendants to, within thirty days of the date of this opinion, inform the court as to their willingness to comply with the court's understanding of the March 19 telephone conference.[5] If defendants wish to insist upon their prior stance, this court will permit plaintiffs sixty days from notice of such within which to effect service pursuant to the Hague Convention. Further, since defendants failed to return the acknowledgment as required by Rule 4(c)(2)(C)(ii) within twenty days, this court will assess the costs of such service upon defendants pursuant to Rule 4(c)(2)(D). *See supra* footnote 1.

*Jurisdiction*

Defendants' motion to dismiss for lack of personal jurisdiction must be denied "if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577 (11th Cir.1986). Further, plaintiffs' "allegations must be accepted as true for purposes of this Motion to Dismiss...." *Id.* This inclination to give greater weight to plaintiffs' affidavits and supporting materials "seems especially desirable when, as herein, the jurisdictional questions are apparently intertwined with the merits of the case." *Psychological Resources Support Systems, Inc. v. Gerleman,* 624 F.Supp. 483, 486–87 (N.D.Ga. 1985), citing Moore's Federal Practice ¶ 12.07 [2.2], at 12–56 to 58 (2d ed. 1985).

Plaintiffs assert the existence of an oral contract pursuant to which plaintiffs repre-

---

**5.** As discussed previously, this court intended the phone conference to end the dispute regarding the sufficiency of service of process. At the conclusion of that conference, it was the court's understanding that such a result had been achieved.

sented themselves as defendants' agents and made substantial sales of defendants' products, including sales to Georgia corporations. Twice, negotiations regarding the contract were conducted in Atlanta, Georgia. Plaintiffs also allege that defendants operated a warehouse in Macon, Georgia. Plaintiffs assert in this action that defendants failed to renumerate them for commissions earned in furtherance of the contract and that defendants fraudulently induced plaintiffs to enter into the contract with such an intent.

■ Plaintiffs correctly argue that these allegations bring the defendants within the court's jurisdiction pursuant to the Georgia long arm statue, O.C.G.A. § 9–10–91(1). This subsection provides for jurisdiction over a nonresident defendant "if in person or through an agent, he ... (1) transacts any business within the state," language which courts have held applicable to matters in contract. *Bracewell v. Nicholson Air Service, Inc.*, 748 F.2d 1499 (11th Cir.1984), relying on *Whitaker v. Krestmark of Alabama, Inc.*, 157 Ga.App. 536, 278 S.E.2d 116 (1981). However, the jurisdiction of this court is not conferred upon a nonresident who merely contracts with a Georgia resident. *Phillips v. Electrical Constructors of America, Inc.*, 535 F.Supp. 1387 (M.D.Ga.1982). Rather, the nonresident must purposefully do some act or consummate some transaction in Georgia from which the claim arises or to which the claim is related. Further, the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *Davis Metals v. Allen*, 230 Ga. 623, 625–26, 198 S.E.2d 285 (1973); *Algemene Bank Nederland, M.V. v. Mattox*, 611 F.Supp. 144 (N.D.Ga.1985).

■ To satisfy the first two prongs of the jurisdictional test consistent with the strictures of due process, plaintiffs must show that defendants "purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316,

66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Such minimum contacts may be established by a nonresident's continuous and systematic general business contacts with the state "even if the cause of action does not relate to the defendant's activities in the state." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413–14 and n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). Absent such "general jurisdiction," a forum may exercise "specific jurisdiction" over a nonresident defendant when such defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to these activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182, citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872. Without deciding the question of general jurisdiction, the court finds specific jurisdiction proper because the defendants' contacts with the forum are directly related to the claim asserted.

Defendants rightly state that neither the "mere foot-fall of the defendant's agents on the state's soil" nor the "existence of a contract between a foreign defendant and a resident of the forum state" automatically amounts to purposeful availment. *Sea Lift, Inc. v. Refinadora Costarricense*, 792 F.2d 989, 992 (11th Cir.1986). Purposeful availment consists of more than the "unilateral activity of another party or a third person." *Helicopteros*, 466 U.S. at 417, 104 S.Ct. at 1873.

However, jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. Such contacts exist in this case as a result of the defendants' entry into a contractual relationship, the breach of which forms the basis for this cause of action. "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanc-

tion in the other state for the consequences of their activities." *Id.* at 472, 105 S.Ct. at 2182, citing *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957). This contract, like any other, is "but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185, quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–17, 63 S.Ct. 602, 604–05, 87 L.Ed. 777 (1943). The parties in this case allegedly negotiated at least three times, twice in Atlanta. Such negotiations involved discussions as to both the terms of a contract and the modification of these terms. Commission rates and sales territories were discussed and agreed upon. Meetings in a forum state may constitute purposeful availment if they involve significant negotiations of important terms. *Sea Lift, Inc.,* 792 F.2d at 993 (noting that the execution of a boilerplate contract does not rise to the level of significant negotiations). These negotiations and the resulting contract prompted plaintiffs to represent themselves as defendants' agents and as such to consummate substantial sales of defendants' products. Defendants' failure to pay commissions allegedly due plaintiffs is a breach of the contract, thus making it clear that the cause of action arises directly from defendants' contacts with the forum state.

In considering these factors—prior negotiations, contemplated future consequences, the terms of the contract and the parties' actual course of dealing—this court finds both that defendants purposefully established sufficient minimum contacts with the forum state and that the plaintiffs' claim arises from such contacts, thus enabling the court to properly assert *in personam* jurisdiction over the defendants.

These findings do not, however, end the court's inquiry. "Once it has been determined that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. 2184, citing *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160. Factors identified by the Supreme Court as important in such an evaluation include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief, the judicial system's interest in furthering the efficient resolution of disputes, and the state's shared interests in furthering fundamental substantive policies. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (citations omitted). When the issue involves the assertion of jurisdiction over an alien defendant, the Supreme Court has recently cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* —— U.S. ——, ——, 107 S.Ct. 1026, 1035, 94 L.Ed.2d 92 (1987) (O'Conner, J.), quoting *United States v. First National City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting). Courts should conduct a careful inquiry into the reasonableness of the assertion of jurisdiction in a particular case, considering both the procedural and substantive policies of other nations and the federal interest in foreign relations policies, and they should be unwilling to find the serious burdens on alien defendants outweighed by the minimal interests of the plaintiff or the forum. *Asahi,* —— U.S. at ——, 107 S.Ct. at 1035.

Though defending this action in the Middle District of Georgia may be expensive and burdensome, defendants surely realize that engaging in international commerce resulting in extensive sales in Georgia and other southeastern states requires them to answer for complaints resulting therefrom. Defendants could have "reasonably antici-

pated being haled into court" in Georgia. *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

Unlike *Asahi*, this case does not represent a situation where foreign litigants must submit their dispute to another nation's judicial system. This case involves Georgia plaintiffs and their claim for a substantial sum allegedly owed them by defendants. Correspondingly, Georgia has a "manifest interest in providing effective means of redress for its residents." *McGee*, 355 U.S. at 223, 78 S.Ct. at 201.

West Germany and the United States cooperate in widespread commerce. Both nations are parties to several international conventions, including the Hague Convention, to facilitate both trade and the disputes resulting therefrom. Participation in these conventions manifests an intent to make the citizens of one nation amenable to suit in the courts of the other. International trade is furthered rather than retarded by mechanisms providing for the orderly settlement of disputes. Since the defendants have allegedly profited from a substantial business relationship with the United States and the State of Georgia, and since the plaintiff and the forum have significant interests justifying the imposition of jurisdiction over the nonresident defendants, this court determines that its assertion of *in personam* jurisdiction over the defendants is reasonable and does not offend the traditional notions of fair play and substantial justice.

■ This court notes that defendants Dalhoff and Schmiedeskemp assert that the fiduciary shield doctrine should prevent the exercise of *in personam* jurisdiction over them. Plaintiffs assert that the defendants, including these individuals, fraudulently induced the plaintiffs to enter into a contract and to perform services for which defendants never intended to render payment. Mindful that it must look to the individual and personal contacts of the officers rather than their contacts solely as representatives of the corporation, *see Candy H. v. Redemption Ranch, Inc.*, 563 F.Supp. 505, 513 (M.D.Ala.1983), this court believes *Jackam, supra*, controls in this situation. In reversing a district court's decision to dismiss because plaintiffs failed to pierce the corporate veil, the Eleventh Circuit said that such a dismissal amounted to a decision on the merits. The issue is not whether the plaintiffs will ultimately prevail on the merits, "but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Jackam*, 800 F.2d at 1580–81. This court is of the opinion that plaintiffs are entitled to conduct discovery to determine the nature of the individual defendants' representations and in what capacity they were made.

In summary, then, this court finds service by mail pursuant to Rule 4(c)(2)(C)(ii) a proper manner of service in diversity cases and further finds defendants' arguments regarding the timeliness of such service mooted by their recalcitrance. In addition, this court determines that service was perfected pursuant to defendant BESI's acknowledgment received on February 9, 1987, and the alien defendants' acknowledgments through counsel. This court awaits correspondence from the alien defendants regarding their desire to have service effected pursuant to the Hague Convention. Finally, plaintiffs have demonstrated a significant relationship between the defendant, the forum and the litigation, thereby permitting this court to properly assert *in personam* jurisdiction over the defendants. Defendants' motion to dismiss is DENIED.