**ELECTRICAL SPECIALTY COMPANY,**
Plaintiff–Appellee,

v.

**ROAD AND RANCH SUPPLY, INC.;**
Arlen J. Bolls, aka A.J. Bolls,
Defendants–Appellants.

No. 91–35428.

United States Court of Appeals,
Ninth Circuit.

Submitted June 4, 1992 *.

Decided June 15, 1992.

---

\* Pursuant to Ninth Circuit Rule 34–4 the panel unanimously finds this case suitable for disposition without oral argument.

Larry Jent, Williams, Jent & Dockins, Bozeman, Mont., for defendants-appellants.

R.J. Sewell, Jr., Smith Law Firm, Helena, Mont., for plaintiff-appellee.

Before: FARRIS, NORRIS and KOZINSKI, Circuit Judges.

FARRIS, Circuit Judge:

Road and Ranch Supply, Inc., a Montana corporation, and Arlen J. Bolls, a Montana resident, appeal the Montana district court's judgment in favor of Electrical Specialty Company, a California corporation, in an action on a default judgment secured in a California district court. They contend that the district court erred in refusing to dismiss the complaint in this action under Fed.R.Civ.P. 4(j). They also contend that the district court erred in determining that the default judgment is not void for lack of personal jurisdiction. We affirm.

## I

The facts are not disputed. In February 1981, Bolls executed a promissory note in favor of Electrical Specialty on behalf of himself and Road and Ranch. On February 22, 1985, Electrical Specialty filed suit against Bolls and Road and Ranch for breach of that obligation in a California federal district court.

Three days later, Electrical Specialty mailed a copy of the summons and complaint to the defendants via certified mail, return receipt requested. The mailing included a form for acknowledgment of service and a stamped, self-addressed envelope. The form provided spaces for Bolls to acknowledge receipt of service on behalf of himself and Road and Ranch. Bolls never returned the form. Electrical Specialty did not attempt further service of process.

Defendants never entered an appearance. Electrical Specialty secured a default judgment against them in the amount of $57,-945.67 on June 27, 1985.

Seeking recovery against defendants' property in Montana, Electrical Specialty attempted later that year to register the default judgment with the district court in

Montana. That court, however, vacated and set aside the default judgment by an order dated May 4, 1987, on the ground that the defendants had not been properly served in the proceedings before the court in the Central District of California. The Montana district court concluded that the defendants had been led to believe that they were being served under Fed.R.Civ.P. 4(c)(2)(C)(ii), which requires a plaintiff to serve a defendant personally or by substitution if the form for acknowledgment of service is not returned.

Electrical Specialty then returned to the Central District of California, where it moved the court to reopen the case, accept the order of the Montana district court and issue a new summons. The California district court granted the motion in November 1987.

The court issued a new summons on December 11, 1987. On December 17, Electrical Specialty mailed a copy of the complaint and the new summons to the defendants via certified mail, return receipt requested. Electrical Specialty also enclosed a cover letter advising the defendants that service was being made pursuant to Fed.R.Civ.P. 4(c)(2)(C)(i) and California Code Civ.Proc. § 415.40, and that, pursuant to California law, service of process is deemed complete on the tenth day after mailing. An employee of Road and Ranch signed the return receipts. There is no dispute that this service was sufficient as a matter of California law.

On March 14, 1988, Electrical Specialty appeared before the California district court and requested entry of a default judgment against the defendants. The court set the matter down for hearing on April 4. Defendants did not appear at the hearing. On April 5, the California district court entered a default judgment for $82,951.96.

On May 25, 1988, Electrical Specialty filed this suit on the second default judgment in Montana state court. The suit was subsequently removed to the Montana district court. On October 31, 1990, the Montana district court denied the defendants' motion to set the judgment aside and granted Electrical Specialty's motion for summary judgment. Judgment was entered accordingly on February 21, 1991, and this timely appeal followed.

## II

■ The district court's determination under Rule 4(j) whether there was good cause for failure to timely serve a summons and complaint is reviewed for abuse of discretion. *Hart v. United States*, 817 F.2d 78, 79 (9th Cir.1987).

■ The question whether the second default judgment was void for lack of personal jurisdiction is reviewed *de novo*. *Mason v. Genisco Technology Corp.*, 960 F.2d 849, 851 (9th Cir.1992).

## III

■ (A) *Rule 4(j) Dismissal*—The defendants contend that the Montana district court should have found the second default judgment void under Fed.R.Civ.P. 4(j) because service was not made within 120 days after the complaint was filed.

Rule 4(j) provides:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

The rule encourages efficient litigation by minimizing the time between commencement of an action and service of process. As such, it implements the mandate in Fed. R.Civ.P. 1 to make "a just, speedy, and inexpensive determination of every action." *See* 4A C. Wright & A. Miller, Federal Practice and Procedure § 1137, at 385 (2d ed. 1987).

We need not decide whether (a) the defendants have timely raised their 4(j) contention and (b) Electrical Specialty has failed to comply with the rule's time re-

quirements in securing the second default judgment. Even if the defendants were able to clear these obstacles, the Montana district court did not abuse its discretion in finding good cause for noncompliance.

This court has characterized good cause, at a minimum, as "excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir.1991). The Montana district court, by contrast, stated that good cause could be found where there had been a diligent attempt to comply with the law by providing notice, even if the attempt proved to be statutorily deficient.

This definition might be at odds in some cases with our approach because a diligent, but deficient, attempt at service could be held inexcusable based on the clarity of the statutory requirement that the attempt contravened. In this case, however, we find that the discrepancy is not critical because the sufficiency of the original attempt at service was not the subject of a clear rule. Electrical Specialty's position at the time of the original service attempt was that even if it was insufficient under Rule 4(c)(2)(C)(ii), it was sufficient without more under Rule 4(c)(2)(C)(i) and California law. Only recently have we conclusively rejected that position. *See Mason v. Genisco Technology Corp.*, 960 F.2d 849, 852 (9th Cir. 1992).

Electrical Specialty originally filed the underlying suit on February 22, 1985, and it made its first attempt at service three days later. The defendants had actual notice of the action after this attempt. The Montana district court found the first default judgment void on May 4, 1987. Electrical Specialty promptly returned to the California district court, notifying the defendants on October 2, 1987, that it intended to move for an order reopening the case. Electrical Specialty served the defendants within days after the California district court issued a new summons.

Faced with this procedural history, the Montana district court concluded that "[Electrical Specialty] attempted service in compliance with California law as soon as Judge Murray entered his order finding their first attempt ineffective. The court finds that [Electrical Specialty] made a diligent effort to achieve service and thus will not dismiss the complaint on the basis of Rule 4(j)." The court did not abuse its discretion.

■ (B) *Personal Jurisdiction*—The defendants argue that the district court erred in concluding that Electrical Specialty's second attempt at service in December 1987 created personal jurisdiction over them. They claim that Electrical Specialty's first attempt at service, under Rule 4(c)(2)(C)(ii), precluded them from resorting to service by mail under Rule 4(c)(2)(C)(i) and state law in their second attempt. Instead, they claim, the failed attempt to effect service by mail under Rule 4(c)(2)(C)(ii) required Electrical Specialty to resort to the methods of personal or substituted service referred to in that provision.

The defendants insist that the plain language of the rule supports their position. We reject the argument. Rule 4(c)(2)(C)(ii) provides that a summons and complaint may be served

by mailing a copy of the summons and of the complaint ... to the person to be served, together with two copies of a notice and acknowledgment.... If no acknowledgment ... is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under [the provisions for personal or substituted service under Rule 4(d)(1) or (d)(3)].

The language requiring resort to personal or substituted service under Rule 4(d)(1) and (d)(3) refers to "such summons and complaint." Literally, then, the rule only envisions resort to personal or substituted service when the party making service decides to pursue service of the *same* summons and complaint. Assuming that it is possible to do so within the time constraints imposed by Rule 4(j), nothing in the text precludes the party making service from desisting from further attempts, viewing the attempt to serve under Rule 4(c)(2)(C)(ii) as a nullity, seeking issuance of a *new* summons and beginning service anew. So read, the rule presents the party making service with a choice. When the

acknowledgment is not returned within 20 days, he may (a) seek a new summons and start over or (b) pursue service of the summons and complaint by personal or substitute service under Rule 4(d)(1) or (d)(3). The plain language of the statute does not support the defendants' contention that Electrical Specialty had only one choice.

The defendants also rely on *Armco, Inc. v. Penrod–Stauffer Building Systems, Inc.,* 733 F.2d 1087 (4th Cir.1984). *Armco* is distinguishable. The question in *Armco* was whether ineffective service under Rule 4(c)(2)(C)(ii) could be deemed effective under Rule 4(c)(2)(C)(i) and Maryland law without more. *Id.* at 1089. The court did not decide whether the ineffective service foreclosed subsequent attempts to resort to Rule 4(c)(2)(C)(i) and Maryland law.

There is a split among courts whether subsequent attempts at service under Rule 4(c)(2)(C)(i) and state law are permitted when service by mail fails under Rule 4(c)(2)(C)(ii). *Compare S.J. Groves & Sons Co. v. J.A. Montgomery, Inc.,* 866 F.2d 101, 102–03 (4th Cir.1989) (permitted); *Humana, Inc. v. Jacobson,* 804 F.2d 1390, 1393 (5th Cir.1986) (permitted); *Pascalides v. Irwin Yacht Sales North, Inc.,* 118 F.R.D. 298, 301 (D.R.I.1988) (permitted); *with Combs v. Nick Garin Trucking,* 825 F.2d 437, 443–44 (D.C.Cir.1987) (not permitted); *Stranahan Gear Co. v. NL Industries, Inc.,* 800 F.2d 53, 56 (3d Cir.1986) (dictum stating that "resort must be had to personal service"); *Kosta v. St. George's University School of Medicine,* 641 F.Supp. 606, 610–11 (E.D.N.Y.1986) (not permitted); *F.D.I.C. v. Sims,* 100 F.R.D. 792, 794–95 (N.D.Ala.1984) (not permitted).

We conclude that ineffective service under Rule 4(c)(2)(C)(ii) does not preclude subsequent service under Rule 4(c)(2)(C)(i) and state law. Our conclusion turns on the text of Rule 4(c)(2)(C)(ii), which requires only that *"such* summons and complaint" be served personally or by substitution. Because Electrical Specialty secured a new summons, we need decide nothing more than that Rule 4(c)(2)(C)(ii) does not preclude subsequent service under Rule 4(c)(2)(C)(i) and state law when the party

seeking service returns to the district court and secures the issuance of a *new* summons. Whether the party seeking service must in all cases secure a new summons is a question for another day.

The courts that have reached the opposite conclusion rely on the plain meaning of Rule 4(c)(2)(C)(ii), and *Armco. See, e.g., Combs,* 825 F.2d at 443–45; *Stranahan,* 800 F.2d at 56; *Kosta,* 641 F.Supp. at 610.

The meaning of Rule 4(c)(2)(C)(ii) is ambiguous in this context. In *Armco,* the court noted that the form of acknowledgment advised the party receiving service that it need do nothing if it did not accept and acknowledge service, though it might be held liable for the costs of personal service. 733 F.2d at 1089. The court was concerned that a party, lulled by this information into believing that service had not been perfected when service went unacknowledged, could be surprised by a default judgment. In this case, by contrast, the defendants were not subjected to a default judgment as a result of the unacknowledged federal mail service. Further, Electrical Specialty specifically advised the defendants, when it made its second attempt at service, that they were being served under Rule 4(c)(2)(C)(i) and Cal.Code Civ. Proc. § 415.40. Electrical Specialty also advised:

> By virtue of the California Rules of Civil Procedure as incorporated into Federal Rule 4, service of process is deemed complete on the tenth day after mailing. In this instance the mailing date is December 17, 1987.

> So that you are not surprised, [we] would like to confirm that service of process is effected upon you by virtue of your signing of the certified mail receipt and does not require you to acknowledge service.

Neither attempt at service effectively lulled or misled.

If, as the *Mason* court held, unacknowledged mail service under Rule 4(c)(2)(C)(ii) is ineffective, *see* 960 F.2d at 852, then the party making service should be free to treat the attempt as null. The rule as enacted does not foreclose the possibility that service could also be secured by other

means reasonably intended to assure actual notice.

Our interpretation of Rule 4(c)(2)(C)(ii) fulfills the goals of Rule 4, which was designed "to provide maximum freedom and flexibility in the procedures for giving all defendants ... notice of commencement of the action and to eliminate unnecessary technicality in connection with service of process." 4 C. Wright & A. Miller, Federal Practice and Procedure § 1061, at 216 (2d ed. 1987) (citing cases).

AFFIRMED.